UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ROBERT K.,<br><br>                                   Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Acting<br>Commissioner of Social Security,<br><br>                                   Defendant. | Case No.: 25-cv-00312-JLB<br><br>**ORDER GRANTING PLAINTIFF'S MERITS BRIEF**<br><br>**[ECF No. 14]** |

On February 11, 2025, plaintiff Robert K. ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits and supplemental security income ("SSI") benefits.  (ECF No. 1.)

Before the Court and ready for decision is Plaintiff's merits brief.  (ECF No. 14.) The Commissioner filed an opposition (ECF No. 16), and Plaintiff filed a reply (ECF No. 17).  For the reasons set forth herein, the Court **GRANTS** Plaintiff's merits brief, reverses the decision of the Commissioner, and remands this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.     PROCEDURAL BACKGROUND

On April 30, 2022, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act and for SSI under Title XVI of the Social Security Act, alleging disability beginning November 1, 2019. (Certified Administrative Record ["AR"], at 453–66, 27.)  The claims were denied initially and upon reconsideration.  (AR 352–57, 365–76.)  Subsequently, Plaintiff requested and was granted an administrative hearing before an administrative law judge ("ALJ").  (AR 382–83.)

An administrative hearing was held on October 31, 2023.  (AR 44–63.)  At the hearing, Plaintiff was represented by counsel and testimony was solicited from Plaintiff and a vocational expert ("VE").  (AR 44–63.)  On February 28, 2024, the ALJ issued his decision, finding Plaintiff was not disabled, as defined in the Social Security Act, from November 1, 2019, through the date of decision.  (AR 24-43.)

The ALJ's decision became the final decision of the Commissioner on January 7, 2025, when the Appeals Council denied Plaintiff's request for review.  (AR 1–7.)  Plaintiff exhausted administrative remedies and timely filed this civil action on February 11, 2025.  (ECF No. 1.)

## II.    SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2019, the alleged onset date.  (AR 29.)

At step two, the ALJ found that Plaintiff had the following severe impairments: HIV, asymptomatic; congestive heart failure; anxiety disorder, post-traumatic stress disorder ("PTSD"), agoraphobia, and attention deficit hyperactivity disorder ("ADHD").  (AR 30.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (AR 30.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform medium work" as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following limitations:

> [the claimant can] understand, remember, carry out, and apply simple job instructions and simple repetitive tasks, unskilled work; can interact appropriately with coworkers and supervisors, should not be teamwork or collaborative work; can appropriately make handoffs of work materials and products to coworkers and supervisors; non-public; can appropriately respond to supervision, routine work situations and settings and changes in routine work situations and settings; can appropriately make decisions, ask questions, and use judgment.

(AR 32.)

For purposes of his step four determination, the ALJ found that Plaintiff was unable to perform any of his past relevant work.  (AR 35.)

At step five, based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy (*e.g.*, packager, industrial cleaner, and assembler), the ALJ  found that Plaintiff had not been under a disability, as defined by the Social Security Act, since November 1, 2019, through the date of decision.  (AR 36–37.)

## III.    PLAINTIFF'S CLAIMS OF ERROR

As reflected in Plaintiff's merits brief, the disputed issues that Plaintiff is raising as the grounds for reversal and remand are as follows:

1.    Whether the ALJ erred in assessing Plaintiff's physical RFC.  (ECF No. 14 at 4–6.)

2.    Whether the ALJ erred in assessing the opinion of consultative psychological examiner, Montez McCarthy, PsyD.  (*Id.* at 6–9.)

3.    Whether the ALJ erred in assessing Plaintiff's subjective symptom testimony.  (*Id.* at 9–13.)

///

///

## IV.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529- 30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## V.    DISCUSSION

### A.    The ALJ Erred in Assessing the State Agency Medical Consultants' Opinions and Plaintiff's Physical RFC.

#### 1.    Parties' Arguments

Plaintiff argues that the ALJ erred by finding only "partially persuasive" the opinions of the state agency medical consultants, S. Lee, M.D. and G. Spellman, M.D., with respect to Plaintiff's physical RFC and then by formulating his own lay RFC instead of developing the record further. (ECF No. 14 at 4–6.) Plaintiff further argues that the late evidence he submitted to the Appeals Council is "highly relevant" and supports a finding that the ALJ erred in assessing the RFC. (*Id.* at 5–6.)

In response, the Commissioner argues that the ALJ properly assessed the RFC. (ECF No. 16 at 2–4.) The Commissioner contends that the ALJ properly translated and incorporated the clinical findings in the record into a succinct RFC. (*Id.* at 2–3.) The Commissioner highlights the revised regulations which "expressly state that the RFC is an administrative finding, not a medical opinion, which only the ALJ may make. (*Id.* at 3.)

25-cv-00312-JLB

The Commissioner further argues that there is not a reasonable probability that the evidence submitted to the Appeals Council would change the outcome of the decision. (*Id.* at 3–4.)

### 2.    Applicable Law

A claimant's RFC "is the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) ("The RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." (citation omitted)). The ALJ is "responsible for assessing [the RFC]." 20 C.F.R. §§ 404.1546(c), 416.946(c). Specifically, it is an ALJ's responsibility to translate medical opinions into concrete, functional limitations. *See Rounds*, 807 F.3d at 1006 ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). The ALJ must determine a claimant's RFC "based on all of the relevant medical and other evidence," and will consider "any statements about what [the claimant] can still do that have been provided by medical sources" and "descriptions and observations of [the claimant's] limitations" provided by the claimant and other non-medical sources. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Laborin*, 867 F.3d at 1153.

The ALJ need only consider those limitations supported by the record and need not take into account properly rejected evidence or subjective complaints. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. *Id.*

An ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (citation omitted). The ALJ must consider all relevant records in its analysis because the RFC must be "based on *all* the relevant evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1545, 416.945 (emphasis added). However, "[a]n ALJ's duty

to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).

When the duty to develop the record is triggered, an ALJ may discharge the duty in several ways, including subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998)). As some courts have persuasively observed, "[t]he ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (internal citations omitted). The burden is on Plaintiff to "furnish medical and other evidence that [the ALJ] can use to reach conclusions about [the claimant's] medical impairments(s)." *Mayes*, 276 F.3d at 459 (quoting 20 C.F.R. § 404.1512(a)).

### 3. Analysis

On July 1, 2022, and January 17, 2023, the state agency medical consultants, S. Lee, M.D. and G. Spellman, M.D., assessed Plaintiff with a light exertional level and occasional postural limitations. (AR 268–70, 288–90, 311–14, 333–36.) The ALJ found these opinions "partially persuasive where it is partially supported by and consistent with the record[.]" (AR 34.) However, the ALJ found "a medium exertional level accounts for [Plaintiff's] severe physical conditions." (AR 34.) The ALJ noted that the "record indicates [Plaintiff's] HIV was asymptomatic and well controlled on medication." (AR 34.) The ALJ also noted that the "record indicates [Plaintiff's] CHF was improved on medication" and his "9/15/22, 2/23/23, 6/22/23 physical examinations were within normal limits." (AR 34–35 (citing Ex 6F/19–20).) The ALJ added that the state agency medical consultants "did not have the opportunity to review subsequent evidence." (AR 35.)

In the RFC, the ALJ assessed Plaintiff with the ability to perform medium work and included no postural limitations. (AR 31–32.) Therefore, the ALJ assessed Plaintiff with fewer restrictions than were assessed by the state agency medical consultants. Plaintiff argues that the ALJ's decision to do so was legal error because there are no other medical opinions in the record assessing Plaintiff's physical capabilities and limitations. Plaintiff contends that the ALJ improperly "created his own medical opinion for the entire period and included it in the RFC assessment." (ECF No. 14 at 5.)

Plaintiff does not point to any evidence the ALJ failed to consider in assessing Plaintiff's physical RFC. Rather, he argues that Plaintiff submitted "new and material evidence to the Appeals Council consisting of multiple medical RFC assessments from his treating doctor regarding his ability to work during the relevant period." (ECF No. 14 at 5 (citing AR 254–57).) These checklist-style opinions, dated June 2021, June 2022, August 2023, and March 2024,[1] indicate that Plaintiff can lift, push, and pull no more than ten pounds, which would be inconsistent with even light work. (AR 254–55.) This is in contrast with the light work assessment of the state agency medical consultants and the medium work assessment by the ALJ. The primary difference between the ability to perform the light work assessed by the state agency medical consultants and the medium work assessed by the ALJ is the ability to lift and carry objects.[2]

---

[1] The Court notes that Plaintiff was only permitted to submit new and material evidence to the Appeals Council to consider "so long as the evidence relates to the period on or before the ALJ's decision." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). The ALJ's decision was issued on February 28, 2024. Therefore, this final opinion does not affect the Court's decision.

[2] *See* SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983) (the full range of light and medium work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"); 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."); 20 C.F.R. §§ 404.1567(b), 416.967(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").

25-cv-00312-JLB

During his administrative hearing before the ALJ in October 2023, Plaintiff testified that he could not climb more than a single flight of stairs or walk more than fifteen to twenty minutes before sitting down. (AR 51.) Plaintiff further testified that carrying a gallon of milk or water would be "pushing the limits" and that he cannot carry two 12-pack cans of soda at a time. (AR 52.) Plaintiff claimed these limitations are due to his congestive heart failure ("CHF") and atrial fibrillation. (AR 55; *see also* AR 514, 519.) Dr. Lee, a state agency medical consultant, attributed Plaintiff's CHF to his meth use. (AR 263.) Plaintiff testified that he started using meth regularly following a sexual assault, but that he stopped using in 2021. (AR 53–54.) Dr. Lee stated that "[i]t is well known that meth induced CHF is reversible with cessation of abuse." (AR 263.) Dr. Spellman, on reconsideration, noted that the assessed limitations were "due to hypertension with past episode of CHF in setting on pneumonia 5/20/20, and HIV," but that test results and examination findings from September 2022 showed a CD4 of 490, and a "BMI 27, clear lungs, no edema, benign heart." (AR 305.)

Although the state agency medical consultants found that Plaintiff's medical records and test results indicated the ability to perform light work, the ALJ noted that they did not have the opportunity to review subsequent evidence. (AR 35.) In support of his finding that the state agency medical consultants' opinions were only "partially persuasive," the ALJ cited a medical record from June 2023 indicating that Plaintiff's HIV was "undetectable" and that he was "stable" from a cardiac perspective. (AR 1373–79.) The treatment note further indicates that Plaintiff's EF [ejection fraction] increased from 40% in April 2020[3] to 61% in June 2023, indicating improved heart function.[4] (AR 1377.)

---

[3]    In September 2022, Plaintiff's EF was still listed at 40%. (AR 1100.)

[4]    An EF measurement under 40% usually shows heart failure, while an EF measurement between 55% and 70% is normal. *See* Ejection Fraction Heart Failure Measurement, American Heart Association, https://perma.cc/MDQ9-9KYW (last visited Mar. 30, 2026).

8

25-cv-00312-JLB

Other records cited by the ALJ in his decision support a determination that Plaintiff's CHF improved over time.  In May 2020, Plaintiff underwent an echocardiogram, which showed: "1. Moderately reduced left ventricular systolic function. EF 40%. Global hypokinesis. 2. Mildly reduced RV systolic function.  3. All valves function well." (AR 624.)  A stress test was performed in March 2022, with Plaintiff exercising on a treadmill. (AR 1313–16.)  Plaintiff was reported to have "[g]ood exercise capacity for [his] age" with normal "blood pressure response to exercise." (AR 1314.)  His "[r]esting EKG showed normal sinus rhythm." (AR 1315.)  Plaintiff had another echocardiogram in April 2023. (AR 1416–18.)  The updated echocardiogram showed: "1. The left ventricular size is normal.  The left ventricular systolic function is normal.  2. Normal pattern of left ventricular diastolic filling. 3. The right ventricular size is normal and systolic function is normal. 4. Dilated aortic root.  5. Normal pulmonary artery pressure with right systolic pressure of 26 mmHg using an estimated right atrial pressure of 3 mmHg." (AR 1418.)  In a follow up appointment with Robert Gerrad Deiss, M.D. in June 2023, Dr. Deiss noted, "From a cardiac perspective [Plaintiff] is stable." (AR 1373.)

Plaintiff argues that, given the ALJ's finding of a material change, the ALJ should have developed the record further instead of improperly rendering his own medical opinion. (ECF No. 14 at 4–6.)  Although the Ninth Circuit has stated that "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work," *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir 2022), the Court finds that the ALJ's duty to develop the record further was triggered in this case.  Substantial evidence supports the ALJ's finding that Plaintiff's CHF improved, but the ALJ does not articulate the connection between this improvement and his finding that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, nor does he cite any evidence directly supporting this finding.  When the Court takes into consideration the opinions submitted to the Appeals Council from Plaintiff's treating physicians, the Court finds that Plaintiff's physical RFC needs to be reassessed.  *See Brewes*, 682 F.3d at 1163 (holding that "when

the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence"). None of the newly submitted opinions from Plaintiff's treating physicians, which specifically ask about Plaintiff's ability to lift, push, and pull, opine that he can lift, push, or pull more than ten pounds. (*See* AR 254–57.)

Accordingly, the Court finds that the ALJ erred in assessing Plaintiff's physical RFC.

### B.     The ALJ Erred in Assessing the Opinion of Dr. McCarthy.

#### 1.     Parties' Arguments

Plaintiff argues that the ALJ erred by improperly rejecting the opinion of Dr. McCarthy, Psy.D, the state agency mental consultant. (ECF No. 14 at 6–9.) Plaintiff contends that the ALJ "does not provide any analysis of Dr. McCarthy's opinion." (*Id.* at 7.) Plaintiff further argues that the ALJ's mental RFC is unsupported. (*Id.* at 8–9.)

In response, the Commissioner argues that the "ALJ reasonably evaluated all the medical evidence and resolved all conflicts." (ECF No. 16 at 4.) The Commissioner further argues that the ALJ properly evaluated the consistency and supportability factors in rejecting Dr. McCarthy's opinions. (*Id.* at 4–5.) The Commissioner contends that Plaintiff simply seeks "an alternative evaluation of the record," and argues that "this is an insufficient basis to overturn the ALJ's rational decision." (*Id.* at 6.)

#### 2.     Applicable Law

Under the revised regulations which apply to claims, such as this one, filed on or after March 27, 2017, an ALJ must evaluate the persuasiveness of all medical opinions in the record and articulate in the decision his or her assessment as to each. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). In evaluating the persuasiveness of a medical opinion, an ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, purpose, and extent of the treatment relationship, frequency of examinations, and examining relationship; (4) specialization; and (5) any

25-cv-00312-JLB

other factors that tend to support or contradict the medical opinion, including familiarity with the other evidence in the claim. *See id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). Although an ALJ must consider all these factors, the only factors that the ALJ is required to discuss in his or her opinion are supportability and consistency, unless two conflicting medical opinions are both equally well-supported and consistent with the record. *See id.* §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

In evaluating the persuasiveness of medical opinions, the "most important factors" are "supportability" and "consistency." *See id.* §§ 404.1520c(a), 416.920c(a); *see also Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ must "articulate . . . how persuasive" he or she finds "all of the medical opinions" from each doctor or other source, and "explain how [he or she] considered the supportability and consistency factors" in reaching these findings. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

### 3.    Analysis

On September 27, 2022, Montez McCarthy, PsyD, a licensed clinical psychologist, completed a Comprehensive Psychological Evaluation of Plaintiff. (AR 1075–80.) During the evaluation, Plaintiff complained of "acute non-episodic agoraphobia, post traumatic stress disorder, severe non-episodic anxiety with panic attacks, congestive heart failure (class II, acute, systolic), atrial fibrillation, hypertension II, HIV, insomnia, [and] persistent night terror." (*Id*. 1076.) Plaintiff stated that "he was sexually assaulted in 2015 and has nightmares about it and his mother's death—wakes up screaming. He can't sleep more than four hours. He often wakes up confused in space and time." (AR 1076.)

Plaintiff self-reported that he can take care of his own hygiene, bathing, and dressing. (AR 1077.) He stated that he has a valid driver's license and can independently grocery

11

shop, prepare basic (frozen) meals for himself, and manage financial matters. (AR 1077.) Plaintiff can and does help with basic household chores and cleaning. (AR 1077.) Plaintiff has limited social support and spends his time "trying to engage his community." (AR 1077.)

Dr. McCarthy noted that Plaintiff "made limited eye contact with the interviewer," with Plaintiff presenting "as somewhat disorganized." (AR 1077.) During the evaluation, Plaintiff's "mood was reported to be anxious, at 5 out of 10," his "affect was intense," and his "speech was pressured at times." (AR 1078.) Dr. McCarthy noted that Plaintiff appeared to be in the "Average Range of Intellectual Functioning." (AR 1078.) He further found Plaintiff's fund of knowledge and insight and judgment to be "grossly intact," but noted that Plaintiff struggled with memory, concentration, and calculation." (AR 1078.)

Plaintiff's diagnoses included: PTSD; panic disorder; amphetamine-type substance use disorder, severe, in sustained remission; and with a rule out of bipolar disorder. (AR 1079.) The only source of information for the evaluation was Plaintiff, as no records were provided for review. (AR 1075.) Dr. McCarthy assessed that Plaintiff was in a "mildly chaotic" and "unstable mood" state with a grandiose tone. (AR 1079.) Dr. McCarthy opined that it is possible that such unstable mood states negatively impact Plaintiff's employment. (AR 1079.)

With respect to the functional assessment, Dr. McCarthy determined that Plaintiff could be mildly limited in understanding, remembering, and performing simple one or two-step job/task instructions on a sustained basis, but markedly limited in understanding, remembering, and performing detailed and complex job/task instructions on a sustained basis due to his unstable mood states. (AR 1079.) Dr. McCarthy found that Plaintiff's ability to do the following could be markedly limited due to his unstable moods: understand, remember, and perform detailed and complex job/task instructions on a sustained basis; react to unexpected changes in routine and/or make judgments on complex work-related tasks on a sustained basis; and maintain concentration and attention and persist and/or maintain pace on a sustained basis. (AR 1079-80.) Dr. McCarthy further

25-cv-00312-JLB

found that Plaintiff could be markedly limited in his ability to maintain regular attendance in the workplace, to deal with the usual stresses encountered in competitive work, and to complete a normal workday or workweek without interruptions resulting from his psychiatric conditions on a sustained basis due to his unstable mood states.  (AR 1079–80.)  Lastly, Dr. McCarthy held that Plaintiff's ability to accept instruction from supervisors, interact with coworkers and/or the public on a sustained basis can be markedly limited by unstable mood states.  (AR 1080.)

In his decision, the ALJ summarized Dr. McCarthy's findings and then stated: "The undersigned finds the DDS mental consultants'[5] opinions not persuasive where it is not supported by and not consistent with the record including normal mental status examinations and reports of ability to perform activities of daily living."  (AR 35 (citing Exs. 4F/38, 6F/6, 69).)  The Court finds that the ALJ erred in assessing Dr. McCarthy's opinion.

The Commissioner argues that "the ALJ's terse, yet cogent findings satisfied the regulatory requirements."  (ECF No. 16 at 5.)  However, the ALJ does not discuss the supportability factor at all.  "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant . . . objective medical evidence."  *Woods*, 32 F.4th at 791–92 (internal quotation marks and citation omitted).  In his decision, the ALJ does not address how Dr. McCarthy failed to support his opinions.  Although the ALJ does discuss the consistency factor, an ALJ errs when he fails to address both factors.  *See David C. v. Comm'r of Soc. Sec.*, No. 23-CV-0655-WQH-MMP, 2024 WL 3596856, at *10 (S.D. Cal. July 31, 2024) (collecting cases), *adopted by* 2024 WL 4184086 (S.D. Cal. Aug. 16, 2024).

---

[5]      The Court assumes that this is a typographical error and the ALJ intended this section to apply to Dr. McCarthy.  If the Court were to interpret this otherwise, there would be no assessment of Dr. McCarthy's opinion at all in the ALJ Decision.

With respect to the consistency factor, the Court finds that the ALJ's evaluation is not supported by substantial evidence the record. Dr. McCarthy assessed Plaintiff with marked limitations due to his "unstable mood states." (AR 1079–80.) The records cited by the ALJ do not indicate a stable mood. (AR 35.) The first record cited by the ALJ, dated May 24, 2022, states that Plaintiff was "doing o.k." and noted that he appeared anxious and frequently changed positions in his chair. (AR 1119.) The second record cited by the ALJ, dated April 11, 2023, states that Plaintiff has "been good" and noted that his affect was "euthymic, congruent with mood, no lability." (AR 1426.) The last record cited by the ALJ, dated June 27, 2023, states that Plaintiff's mood was "terrible" and noted that his affect was "dysthymic, congruent with mood, appropriately tearful, mild lability." (AR 1363.) The ALJ cites no other records in his discussion of Dr. McCarthy's opinion.

The ALJ also states that Dr. McCarthy's marked limitations are inconsistent with Plaintiff's "reports of ability to perform activities of daily living." (AR 25.) The ALJ does not elaborate on this statement in the paragraph discussing Dr. McCarthy and the Court cannot discern which activities of daily living the ALJ finds inconsistent with Dr. McCarthy's marked limitations due to Plaintiff's unstable mood states.

Given the foregoing, the Court finds that the ALJ erred in his assessment of Dr. McCarthy. The error was not harmless as it impacted Plaintiff's mental RFC determination. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (defining harmless error as such error that is "inconsequential to the ultimate nondisability determination").

As the Court finds that the ALJ erred in assessing both Plaintiff's mental and physical RFC, the Court finds remand appropriate and declines to address Plaintiff's remaining argument regarding subjective symptom testimony.[6]

---

[6] The Court notes that the reasons given by the ALJ for rejecting the severity of Plaintiff's subjective symptom testimony are largely the same as those given to reject the opinions discussed herein and suffer from the same deficits. (AR 32.)

25-cv-00312-JLB

### C.      Remand for Further Administrative Proceedings is Appropriate

Remand for further administrative proceedings, rather than an award of benefits, is warranted because further administrative review could remedy the ALJ's errors.  *See Brown-Hunter*, 806 F.3d at 495 (remanding for an award of benefits is appropriate in rare circumstances).  This is not a case where "further administrative proceedings would serve no useful purpose."  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

## VI.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's merits brief, reversing the decision of the Commissioner, and remands this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated:  March 30, 2026

Hon. Jill L. Burkhardt
United States Magistrate Judge